# Blacksher Co., *et al. v.* Northrup.

## *Bill for Partition.*

(Decided December 29, 1911.   Rehearing denied February 15, 1912. 57 South. 743.)

1. *Wills; Definition.*—A will is an instrument by which a person makes disposition of his property to become effective after his death, and is in its own nature ambulatory and recovable, during the life of the testator.

2. *Same; Execution; Requisites.*—Sec. 6172, Code 1907, applies to all wills, and hence, an instrument purporting to devise real or personal property, but signed only by one witness, is ineffectual for any purpose. There is no such thing under our statutes as a will which does not dispose of property.

3. *Same; Probate; Judgment; Collateral Attack.*—Where the decree admitting the will to probate recites on its face that the paper was attested by only one witness, it discloses that the court had no jurisdiction to admit the paper to probate, and hence, was subject to collateral attack.

4. *Same; What Law Governs.*—As to bequests of personal property, the law of the domicile governs, but the lex rei sitae governs the devise, descent or heirship of real property.

5. *Executors and Adminstrators; Form and Requiste; Appointment.*—Testamentary executors and guardians are such only as are named by a will executed in accordance with section 6172, Code 1907, as under the provisons of sec. 2507, Code 1907, letters may not be granted to them until after the will had been admitted to probate.

(McClellan, J., dissenting.)

APPEAL from Monroe Law and Equity Court.

Heard before Hon. H. H. McCLELLAND, Special Judge

Bill by Mary S. Northup against the Blacksher Company and others to sell lands owned jointly. Decree

overruling demurrer to the bill and certain of the respondents appeal. Reversed, rendered, and remanded.

As amended, the bill alleges: That Dr. J. W. Shomo died leaving certain heirs named. That at the time of his death he was seised and possessed of a considerable quantity of real estate and personal property, situated in Monroe county, Ala., describing the real estate. That said Shomo left a last will and testament, by which he devised and bequeathed said real estate to his daughter, Nellie S. King, and her three children, this complainant and two others named, and certain other property to his other daughter and her children. That the executor therein named filed an instrument in writing purporting to be the last will and testament of said Shomo, and that it was duly propounded and admitted for probate, giving the dates, and the orders as exhibits. It is then alleged: That the one-fourth interest of Nellie S. King in said above described real estate has passed by mesne conveyances since said will and prior to her death to the Blacksher Company and others named therein, in the following manner: On the 20th day of September, 1900, by deed executed and delivered jointly by Nellie S. King and her husband to G. G. Scott and T. W. Weatherford, and later by deed from Weatherford to Scott for his undivided interest in said land; in March, 1902, by deed from Scott and wife to the Blacksher Company, purporting to convey to the same all of the trees and timber on the lands above described for a consideration, with a time limit that has not yet expired, to remove said trees, which deed purported to convey all the trees and timber, but which conveyed really an undivided one-fourth interest in said trees and timber. That Scott died in April, 1908, leaving a last will and testament, by which he devised all of his right, title, and interest in the soil of the above-described land, and

such timber as might not have been cut by the Black-
sher Company within the time limited to them, to his
wife, Anna S. Scott. That before the filing of this bill
the said Anna S. Scott executed and delivered to the
children of Dr. Scott and his wife, Kate (naming
them), said above-described land, reserving a life estate
therein to herself. It is then alleged that G. G. Scott,
Jr., a son of G. G. Scott and his first wife, Kate, died
in September, 1909, and that his sister, Kate M. Scott,
was appointed administratrix of the estate. It is then
alleged that the estates of Nellie King, Kate Scott, and
G. G. Scott are solvent, and that G. G. Scott left no
heirs at law, except his brothers and sisters. The sixth
paragraph sets forth the interest of each in the lands
and timber, alleges that it cannot be equitably divided,
and prays for a sale for division. The will is made an
exhibit to the bill, and is in the ordinary form, with
only one witness, and without the usual formula as to
the signing and sealing in the presence of the witness,
who signs in the presence of the testator, etc. The de-
murrers were interposed by Charles E. Farish, David S.
King, the Blacksher Company, and Anna S. Scott, and
are that it affirmatively appears from said amended bill
of complaint that the only right asserted by the com-
plainant to an interest in the lands in controversy is
based upon said alleged will of J. W. Shomo, and it fur-
ther appears affirmatively it was attested by but one
witness, and that the decree purporting to probate the
same recites that there was but one witness. It there-
fore affirmatively appears that the complainant has no
interest in the lands therein described.

STEVENS & LYONS, and C. J. TORREY, for appellant.
The present suit was instituted to ascertain whether the
document purporting to be a will, even though it has

gone through the form of a probate, is effectual to pass real and personal property. The decree itself finds and recites that the will under consideration was attested by only one witness, and hence, is without power to pass property in Alabama.—Sec. 6172, Code 1907. Prior to the Code of 1852, the will was entitled to probate, but not to pass property.—*Powell v. Powell*, 30 Ala. 705; *Ex parte Henry*, 24 Ala. 546; *Shields v. Alston*, 4 Ala. 255; *McGrews v. McGrews*, 1 S. & P. 31. The court was without authority to deny probate of the will, but must either render a judgment sustaining or denying its validity.—*Woodruff v. Hundley*, 127 Ala. 655. Such a decree is conclusive only upon the proposition that the instrument is entitled to probate, but does not determine whether anything passes by virtue of the will.—*McCann v. Ellis*, 55 South. 306; 39 Atl. 466; 81 N. W. 1081; 15 Ohio State, 97; *Woodruff v. Hundley*, *supra*. For the legal effect and meaning of the decree probating the will in question.—See 23 Cyc. pp. 1101-2. No presumption can be indulged with respect to any writing when the instrument itself shows that the presumption is false.—*O'Neal v. T. C. I. Co.*, 143 Ala. 86. A decree finding and reciting that a will is attested by but one witness does not and cannot make such will effective to pass real or personal property in Alabama.— *Gay v. Sanders*, 28 S. T. 1019; *Fortner v. Wiggins*, 48 S. E. 694; *Torrey v. Bruner*, 53 South. 338; *Wall v. Wall*, 16 Atl. 599. The protection against collateral attack of a judgment in rem is only against those irregularities which may have intervened in the proceedings after the jurisdiction of the court attached.—*Knox v. Paul*, 95 Ala. 507. The lex loci sitæ controls all devises of land.—*Dickcy v. Vann*, 81 Ala. 425; Redfield on Wills, 398; *Brock v. Frank*, 51 Ala. 85; *Goodman v. Winter*, 64 Ala. 410.

BARNETT & BUGG, for appellee. The probate courts have original general and unlimited jurisdiction of the probate of wills and the proceeding is in the nature of a proceeding in rem, and until its judgment is avoided in some method prescribed by law, establishes the will as the law of descent and distribution governing the particular estate, and such judgment cannot be collaterally impeached.—*Deslonde & James v. Darrington's Heirs*, 29 Ala. 92; *Hall's Heirs v. Hall*, 47 Ala. 290; *Dickey v. Vann, supra; Knox v. Paul, supra; Woodruff v. Stewart*, 63 Ala. 206; *Sims v. Waters*, 65 Ala. 442; *Steele v. Tutwiler*, 68 Ala. 107; *Brooks Admr. v. Frank*, 51 Ala. 85; *Goodman v. Winter, supra; Wyman, et al. v. Campbell, et al.*, 6 Port. 219; *Pettus v. McClannahan*, 52 Ala. 55; *Hamner v. Mason*, 24 Ala. 480; 60 Am. Dec. 352-350; 73 Am. Dec. 53-4; 81 Am. Dec. 1261. The judgment in rem is a solemn declaration upon the status of the thing and ipso facto renders it to be what it declares it to be.—*Hines v. Hussey*, 45 Ala. 496; 72 Ala. 377; *Leatherwood v. Sullivan*, 81 Ala. 459; *McCann v. Ellis*, 55 South. 303.

ANDERSON, J.—While impressed with the logic and reasoning of the argument of appellants' counsel, to the effect that the formalities as to the execution of wills as contained in section 6172 of the Code of 1907 apply only to wills which devise real or personal property, and are not essential as to wills appointing an executor or guardian; that a will devising property, though not executed according to the statute, may be invalid as a devise or bequest of property, and yet may be a valid will for other purposes, under the common law, and entitled to probate and proof, and is operative to the extent to which it may be valid as a testamentary document, we do not think the question, however, now

open or debatable in this jurisdiction, since the adoption of a complete system of statutes, as far back as the Code of 1852, covering the subject of wills, and providing how they must be executed and proven.—*Barker v. Bell*, 46 Ala. 216.

A will has been defined to be "an instrument by which a person makes a disposition of his property, to take effect after his decease, and which is in its own nature ambulatory and revocable during his life."—1 Jar. on Wills, § 1. This definition has been approved and adopted in the cases of *Rice v. Rice*, 68 Ala. 216, and *Daniel v. Hill*, 52 Ala. 436.

In other words, there must be some disposition of property of the testator in order for the paper to amount to a will, and it must be executed as required by the statute. Therefore section 6172, in requiring that wills to be effective to pass real or personal property, except nuncupative ones, must be in writing, signed by the testator or some person in his presence, and by his direction, and attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator, covers all wills, as there is no such thing as a will under our laws which does not dispose of property. As was said by this court through Tyson, J., in the case of *Woodruff v. Hundley*, 127 Ala. 640, 29 South. 98, 85 Am. St. Rep. 145: "One of the essential requirements to the validity of the instrument as a will is that it must be attested by at least two witnesses who must subscribe their name thereto in the presence of the testator.—Code 1896, § 4263. Unless this requisite of the statute was complied with, the instrument was ineffectual to pass real or personal property. It was not a will at all within the purview of the statute, and cannot be admitted to probate. Proof of this essential requisite is just as necessary in order

to probate the paper as a will as was a compliance with the statute necessary to give validity to it."

True, our statute authorizes testamentary executors and guardians, but that means that they should be named by a will, such a will as is defined by our court and which has been executed in compliance with the statute, and authorizes the issue of letters only after the will has been admitted to probate.—Section 2507 of the Code of 1907. There are cases to the effect that there can be a will appointing an executor, but making no general disposition of the property, and that it can be proved as such.—*Mulholland v. Gillan,* 25 R. I. 87, 54 Atl. 928, 1 Ann. Cas. 366, and cases there cited. Whether such a rule can prevail in our state we need not determine, but it could be doubtless upheld as a will for the reason that it is a special disposition of the prop- erty to the executor for administration purposes. It gives him the legal title to the personalty and the right to control or sue for the realty and to be operative and valid should be executed and proven as required by our statute. The paper in question was attested by but one witness, and was not therefore a will, and should not have been admitted to probate.

So the remaining question is, Was the decree of the probate court so admitting same conclusive as against a collateral attack? While the decree of the probate court declares the instrument in question to be proven and admitted it to probate, it shows upon its face that it was not a will under the laws of this state. The decree affirmatively shows upon its face, and in fact recites, that it was attested by but one witness W. A. Shomo, "the only witness." If this was true, and we must consider all of the recitals of the decree, then the instrument offered was a nullity as a will. It did not purport to be a will, and gave the probate court no juris-

diction. The probate court may be a court of general jurisdiction in matters pertaining to the estate of decedents, but its general jurisdiction in probating wills must be confined to instruments which purport to be wills. It cannot be resorted to for the purpose of making something out of nothing. It has jurisdiction to probate wills, but not to convert something that the law says is not a will into a will, and thus nullify, or, in effect, amend or repeal, our statutes. The proceedings to probate a will is in rem, and, in order for the court to acquire jurisdiction and to proceed to a final decree, there must be a res, not a blank piece of paper or a paper which makes no attempt to, and does not in fact, purport to be a will. Of course, if a paper which purports to be a will is presented and is declared proven, and the decree does not show upon its face that it contravenes the law or public policy, the decree will be binding on the world upon collateral attack, and the paper thus probated becomes the last will and testament of the decedent, and governs the descent and distribution of his property. On the other hand, a decree which upon its face contravenes the law or public policy is coram non judice. The decree in question bespeaks its own impotency. It is void upon its face, and is subject to collateral attack.—Black on Judgments, § 246. Our court, like most others, has often quoted the general rule as to the effect and conclusiveness of a decree of a court of competent jurisdiction admitting a will to probate. The general rule is that "the probate of a will cannot be collaterally impeached on any ground." "The probate of a will establishes its status; and the status thus established adheres to the will as a fixture, and the judgment or decree in the premises, unless avoided in some mode prescribed by law, binds and concludes the whole world." As we say, this broad and general rule has

often been quoted and approved by our court, often without exception or qualification, but it has never been enforced or applied in dealing with judgments and decrees, disclosing upon their face that there was no will, and that said decrees thereby contravened the law on the subject of wills. On the other hand, we find our court in the cases of *Jordan v. Thompson,* 67 Ala. 471, and *Knox v. Paul,* 95 Ala. 505, 11 South. 156, while re-iterating the general rule, sounding a warning signal by expressly stating that the rule did not prevail if the decree "contravened some rule of law or public policy." While courts have the right to construe laws, they have no authority to amend or repeal a statute, and to sanc-tion a decree, which shows upon its face, that a paper is not a will under the law, but which at the same time declares that it is a will, would, in effect, ignore sec-tion 43 of the Constitution by permitting the judicial department of our state to exercise legislative powers, and this would be abhorrent to our system of govern-ment. We think our conclusion is not only founded upon sound reason and judgment, but it is supported by several well-considered authorities. In the case of *Wall v. Wall* 123 Pa. 545, 16 Atl. 598, 10 Am. St. Rep. 549, the Supreme Court of Pennsylvania, in discussing the decree admitting a will to probate, which was in-volved in a collateral suit, speaking through Williams, J., said: "The general rule on which the court below rested its ruling in this case is well settled. A decree of probate made by the register of wills is a judicial de-cree, and, after the lapse of five years without appeal, it is conclusive as to the real estate disposed of by it. This rule has been recognized and applied in many cases, among which are *Holliday v. Ward,* 19 Pa. 485, 57 Am. Dec. 671; *Cochran v. Young,* 104 Pa. 333; *McCay v. Clayton,* 119 Pa. 133, 12 Atl. 860. But the general

proposition thus affirmed must be understood as quali-
fied by the same considerations that qualify the conclu-
siveness of judgments at law.  Of these the most ob-
vious is that which relates to the jurisdiction of the
court over the subject-matter and the persons affected
by the judgment.  If the court has no jurisdiction, it is
of no consequence that the proceedings have been for-
mally conducted, for they are coram non judice.  A
judgment rendered by a justice of the peace in a cause
over which he has no jurisdiction is void, notwithstand-
ing service may have been regularly made on the defend-
ant, and he may have failed to appeal or take a cer-
tiorari within the time prescribed by law.  A judgment
rendered in the court of quarter sessions in a proceed-
ing exclusively within the jurisdiction of the common
pleas, and vice versa, is void for want of jurisdiction
in the court rendering the judgment.  So, although the
court may have jurisdiction of the subject-matter, yet,
if there was no service, actual or constructive, on the
defendant, the judgment is void for want of jurisdiction
over the persons to be affected.  If such want of juris-
diction appears upon the record, it can be taken ad-
vantage of at any time and in any court where the con-
clusiveness of the judgment is the subject of judicial in-
quiry.  The reasons for this is found in the fact that
the record of the judgment bears on its face the proof
of its illegality, and shows the want of power in the trib-
unal to render it.  When it is offered as a conclusive ad-
judication between the parties, an inspection shows that
it is not, because the court had no power to make an ad-
judication.  In the case now under consideration the
jurisdiction of the register is conferred by statute, and
the limitations within which it is to be exercised are
very plainly prescribed.  Within these limits his de-
crees are conclusive.  Outside of them he is without

any authority to make a decree, and his decree, if made, is a nullity. The act of 1833 provides that 'every will shall be in writing, and, unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof or by some person in his presence and by his express direction, and in all cases shall be proved by the oaths or affirmations of two or more witnesses, otherwise said will shall be of no effect.' "

The Supreme Court of Georgia in the case of *Gay v. Sanders,* 101 Ga. 601, 28 S. E. 1019, in passing upon the validity of a decree admitting a will to probate, speaking through Simmons, C. J., said: "The paper upon which the defendant relied, as giving authority for his becoming executor, purported to be a last will and testament, but was attested by only one witness. As a will it was void. 'All wills (except nuncupative wills) disposing of realty or personalty  *  *  *  shall be attested and subscribed in the presence of the testator by three or more competent witnesses.'—Civil Code, § 3272. And in the case of *Thornton v. Chisholm,* 20 Ga. 338, this court held that an instrument attested by two witnesses only was void as a will.  A judgment of the court of ordinary ordering the probate of such a paper attested by one witness only gives that paper no effect as a will in any proceeding in which its validity may be called in question. The court of ordinary is without jurisdiction to render such judgment, which is therefore void. 'The will  *  *  *  had been proven and admitted to record; and yet it had no attesting witnesses, as appears from the probate itself.  *  *  *  It is conceded that it had no subscribing witnesses. The will was therefore utterly void, and of no effect. It was competent, therefore, to move, at any time, to set aside the judgment of the ordinary admitting this paper to

[Blacksher Co., et al. v. Northrup.]

probate. It was a nullity upon its face; and in favor of such a judgment nothing can be presumed.'—*Hooks v. Stamper,* 18 Ga. 471. 'A will attested by only two witnesses is void, and can derive no aid from probate and being admitted to record. The judgment of probate is not merely erroneous, but an absolute nullity on its face. No motion to set aside is requisite, nor is it ever too late to urge its invalidity.'—*Curetton v. Taylor,* 89 Ga. 490 [15 S. E. 643]." This case is in point, except as to the number of witnesses required, which are three in Georgia and two in Alabama.

The Alabama cases cited and relied upon by appellee's counsel, while quoting or expressing the general rule without exception or qualification, do not conflict in conclusion with the present holding. Many of them deal with foreign wills, and the probate thereof in the testator's home state entitled them to probate as wills, and they become valid bequests of personalty and which said probate was conclusive, unless, perhaps, it appeared upon the face of the decree that they were void under the laws of the sister state, in which event we would not be bound by said decree.—*Reynolds v. Stockton,* 140 U. S. 254, 11 Sup. Ct. 773, 35 L. Ed. 464. As to real estate, however, they could not be binding on our courts, as a devise of same, unless executed in conformity with the statutes of this state.

The law of the domicile prevails as to bequests of personal property, but "the lex rei sitæ prevails in regard to the devise, descent, or heirship of real estate, because it does not comport with the dignity, the independence, or the security of any independent state or nation that these incidents should be affected in any manner by the legislation or the decisions of the courts of any other nation or state besides itself."—Redfield on Wills, § 398; *Brock v. Frank,* 51 Ala. 85. A discussion in de-

tail of the numerous Alabama cases cited by counsel for appellee can serve no purpose other than to prolong this opinion, and we will discuss those two which appear to be in conflict. The others, while approving the general rule as to the conclusiveness of decrees admitting wills to probate did not decide the abstract question that a decree void upon its face could not be collaterally impeached, and, if they did, we would not hesitate to overrule them as being unsound. We cannot sanction any ruling upholding and giving life to a decree or judgment which is void upon its face. The case of *Matthews v. McDade,* 72 Ala. 377, did not involve a void decree. The point there involved was whether or not a certain instrument, executed contemporaneously with the will of James McDade, and which was attested by the requisite number of witnesses, and referred to in the will, was in fact a part of the will. In other words, whether or not it was a deed or will. The court held that the probate of same was conclusive on collateral proceedings that it was a testamentary document, or, rather, that it was a will. The opinion does contain the expressions that "the power to probate a will necessarily involves the power to decide whether the paper presented for probate is in fact a will or not a will. Hence it has been held that the probate of a forged paper as a will is binding and valid until revoked, and is conclusive on collateral assailment." There the paper referred to contained statutory requirements as to execution, and the decree was not void, and did not show on its face that the instrument admitted to probate was not a will under the law. We do not think that the court held, or would have held, that the probate of any kind of paper null and void as a will was made a valid will by the probate of same, especially when the decree also disclosed the invalidity of said paper as a will.

Of course, the expression as to the conclusiveness of a decree admitting a forged will to probate can have no bearing upon the present case. The paper, if forged, evidently purported to be a will in legal form and possessing the legal requisites of a will, and was therefore such a paper, as upon its face, gave the probate court jurisdiction. We do not think for a moment that a decree admitting a paper to probate would be upheld as conclusive by any court if the said decree recited that the paper was forged, or that it had never been executed. Here we have a decree which recites and shows upon its face that the paper admitted to probate was not a will. The case of *Leatherwood v. Sullivan,* 81 Ala. 458, 1 South. 718, was dealing with the probate of a foreign will upon the certificate of the judge of the Florida court. It was assailed because attested by only one witness, when the Florida statute required three witnesses. The court declined to condemn the will because of the verity of the certificate from the Florida court, and because the statute of said state was not in evidence, and properly declined to take judicial notice of same. The "moreover clause" in paragraph 3 of the opinion was not decisive of the point, as it had already been decided. Moreover, this identical will and decree was assailed in the subsequent case of *Sullivan v. Rabb,* 86 Ala. 433, 5 South. 746, wherein the Florida statute was introduced, and the court would not or did not invoke the dictum in the case of *Leatherwood v. Sullivan, supra,* to the effect that the probate decree was conclusive, but pretermitted passing upon the validity of the instrument as a will as well as the validity of the decree, but proceeded upon the theory that the personal representative could maintain the suit whether the will was effectual to convey lands or not; that in the instant case the power of an administrator was coextensive with the executor

named in the instrument; that, when the title to the land is not vested in the executor, the powers are practically the same, and either could maintain the suit. Whether the decree admitting the will to probate was or was not valid, the probate court had jurisdiction to appoint a personal representative, and, if he was named or designated as executor when it should have been administrator, the issuance of letters was irregular, but not void or open to collateral attack. Just as we would no doubt hold in the present case, if it was necessary to pass upon the question, as the decree admitting the will to probate could be declared void, yet the issuance of letters to the persons named as executors would be irregular, but would operate to clothe them with the right to administer upon the estate until their said appointment was revoked upon direct attack.

The case of *Vanderpoel v. Van Valkenburgh,* 6. N. Y. 190, is not in conflict with this opinion. It was not dealing with a decree void on its face. This will involved personalty only and was decided upon a statute not set out. The two Virginia cases, *Vaughan v. Doe,* 28 Va. 287, and *Parker v. Brown,* 47 Va. 554, did not deal with decrees void on their face. In each case the wills were valid as bequests of personalty, and as such were entitled to probate, but they were not sufficiently attested to operate as a devise of realty. The court, however, held them conclusive for all purposes upon collateral attack after the expiration of seven years. We are not much impressed with this holding, unless it can be justified, and as the opinion seems to indicate that it was, by a Virginia statute, much broader than our own, which not only limited the right to contest to seven years, but further providing that, if not contested within that time, "the probate shall be forever binding." The case of *Dublin v. Chadbourn,* 16 Mass. 433, is not in

point.  It merely involved the competency of the attesting witnesses, and to all intent and purpose the instrument and decree purported validity upon the face thereof.

Mr. Van Fleet in his work on Collateral Attack, p. 224, states that: "Although a will which lacks the statutory number of witnesses, when presented for probate, affirmatively shows that it is a void piece of paper, yet the cases all agree that its probate is simply erroneous and not void." He cites in support of the assertion the cases above discussed, and none of them hold that the probate of a paper absolutely void as a will is conclusive that it is a valid will. It is true the Virginia cases held that, though the wills considered were not executed so as to devise real estate, they became operative as such after seven years from the probate thereof, if not contested within that period; but it does not appear that the paper probated was a void document as a will. It may have been good, under the law then existing, as a will of personal property, nor does it appear anywhere in the report of the cases that it was even contended that the documents were void as wills. The only point made against them was that they were not so executed as to operate as valid devises of real estate.

In the case at bar the probate court did not attempt to declare the instrument a valid devise or bequest of property, but found that it was not executed as such under the statute, and evidently proceeded upon the erroneous theory that the instrument was a will and entitled to probate, notwithstanding it was not valid as a devise or bequest of property. This theory, however, while sustained in some jurisdictions, is not in harmony with our complete statutory system as to the execution and probate of wills, as demonstrated in the first part of this opinion; but, if such could be the case, in this

jurisdiction, it would avail the appellee nothing, for, if the courts could uphold the will as a testamentary document, it would be for limited purposes and could not be construed by the probate court, or any other court, as a valid disposition of property when attested by but one witness, and which is in the teeth of the statute which requires two.

As the appellee bases her sole claim to or interest in the land sought to be partitioned, under the will in question, she shows that she has nothing to be partitioned, and her bill is, therefore, wanting in equity. The law and equity court erred in overruling the demurrer to the bill and one will be here rendered sustaining the general demurrer for want of equity.

The decree of the law and equity court is reversed. One is here rendered sustaining the demurrer, and the cause is remanded.

SIMPSON, MAYFIELD, SAYRE, and SOMERVILLE, JJ., concur. DOWDELL, C. J., not sitting.

McCLELLAN, J.—(dissenting.)—The jurisdiction of the probate courts of this state of proceedings to probate wills being in rem and original, general, and final, and hence immune from collateral assailment (save for fraud), it seems clear to me upon all well-considered authority that the decree of probate of the paper propounded as the last will and testament of J. W. Shomo, deceased, cannot now in this collateral way be brought into question and thereupon pronounced void, though, of course, upon direct attack the conclusion must have been fatal to this decree of probate.

The following decisions and texts, among others, demonstrate, as I view it, the soundness of the opinion just stated; *Brock v. Frank*, 51 Ala. 85, 89; *Matthews v. McDade*, 72 Ala. 386; *Leatherwood v. Sullivan*, 81 Ala. 458,

462, 1 South. 718; *Goodman v. Winter,* 64 Ala. 410, 426,
38 Am. Rep. 13; *Dickey v. Vann,* 81 Ala. 425, 429-431,
8 South. 195; *Hunt v. Acre,* 28 Ala. 580, 593, 594;
*McCann v. Ellis,* 172 Ala. 60, 55 South. 303; and, also,
Van Fleet on Col. Attack, pp. 224, 609; Herman on
Estoppel, p. 112; *Dublin v. Chadbourn,* 16 Mass. 433,
approvingly cited in *Goodman v. Winter,* 64 Ala. at
page 426, 38 Am. Rep. 13; *Shultz v. Sanders,* 38 N. J.
Eq. pp. 156, 157; 1 Woerner's Law of Administration,
p. 328; *Tarver v. Tarver,* 9 Pet. 174, 180, 9 L. Ed. 91.

In my opinion the sole effect of the recital that one
witness only attested the instrument, whereas the stat-
ute requires two, was and is to show that the probate
court egregiously erred in allowing the probate of the
thus imperfectly executed testamentary instrument.
That fact did not, could not, defeat the jurisdiction of
the court—the only condition wherefrom the utter in-
validity of its decree could result. The idea that a de-
cree in a proceeding in rem pronounced by a court com-
petently jurisdictioned to so pronounce is absolutely
void because it plainly disobeys the law is, it seems to
me, a startling proposition, the consequences of which
will be, if applied, profound, wide-spread, and recur-
rently surprising. Res adjudicata, as referred to col-
lateral assailment, becomes a shadow merely, instead
of a wholsesome and imperatively necessary doctrine,
if such an idea finally and fully prevails.—*Brock v.
Frank, supra;* other authorities, supra. The idea was
soundly refuted in *Shultz v. Sanders,* 38 N. J. Eq. 156,
where it was said: "A court of general jurisdiction may
misconstrue, misapply, or plainly disobey the law in
pronouncing judgment, yet, so long as its judgment re-
mains unreversed, it unalterably binds the parties, and
pronounces the law which defines and determines their
rights in the particular case. * * * The decision

of a domestic court acting within the scope of its powers has inherent in it such conclusive force that it cannot be challenged collaterally, and such decision definitely binds all parties embraced in it, unless on objection *to the court itself, or in a direct course of appellate procedure.* Such judicial act may be voidable, but *it is not void.* Even if admitted erroneous, such error cannot be set up against a decree in a collateral proceeding founded on the decree." (Italics supplied.)

It is not rationally possible to avert the consequence, in conclusion, of an applicable general principle by the mere fact that in the case or cases it was theretofore announced the particular circumstances thereof do not accord with the case under judgment. The doctrine of res adjudicata may be incorrectly applied in a concrete case, thereby leading to an incorrect result; but this cannot reflect upon the doctrine. So it may be said with every assurance of soundness that, whether the question of probate of a paper as a will by a court of competent jurisdiction arises over the validity (against collateral attack) of a decree of a nondomestic court of probating power, or over that of a decree of such a court in this state, the applicable doctrine of res adjudicata is fundamentally the same. Jurisdiction of the subject-matter to so pronounce is and must be the controlling factor. So the doctrine, as respects testamentary papers, inspired this expression in *Brock v. Franks.* "In the absence of statutory provisions in regulation of the subject, the sentence of probate in the proper tribunal of the domicile of the testator is conclusive everywhere, *as to the capacity of the testator, the due execution, and validity of the will."* (Itaics supplied.) In the language of the Lord Chancellor: "No other court could go back upon the factum, and raise any question upon the validity of the will." The assumption that public

policy is violated by the probate of a testamentary instrument which is not attested by the requisite number of witnesses is, as I view it, manifestly untenable. Will or no will, is the inquiry submitted to the court of general and exclusive jurisdiction in the premises. Comprehended within the inquiry is, as appears from the foregoing statement taken from *Brock v. Frank* (and others might be added), whether the paper was duly executed. In deciding the issue so submitted the probate court's decree may be obviously erroneous, but it cannot be opposed to public policy, for the simple reason that, under the charter of it existence, such a decree, when the probate court's jurisdiction is invoked to determine the inquiry of "will or no will," only expresses the judicial prerogative. The allusion to public policy in *Knox v. Paull,* 95 Ala. 507, 11 South. 156, and in *Jordan v. Thompson,* 67 Ala. page 471, has reference patently to the instrument, to its provisions, and not to the decree of the court invoked to probate it.

*Leatherwood v. Sullivan,* 81 Ala. 458, 462, 1 South. 718, is, in my opinion, decisive of the question now under consideration. The suggestion that the pertinent language of the pronouncement was dicta in that case is refuted by reference to the issues in the litigation. D. F. Sullivan, resident of Florida, died leaving a testamentary instrument. He owned lands in Escambia county, Ala. The testamentary instrument was attested "by only one witness," a certified copy thereof being introduced in evidence, as was also a certificate of the judge of probate in Escambia county, Fla., stating that the instrument had been "regularly proved and established." M. S. and Emily S. Sullivan were named as executors in the instrument and letters testamentary were issued by the Florida court to them. The probate court of Escambia county, Ala., upon certificate of the

Florida judge of probate as indicated issued letters testamentary to the Sullivans. The action was detinue, brought by the executors, "for the recovery of 35 pieces of timber, more or less, alleged to have been cut from section 13, township 2, and range 6, *in the county of Escambia, Ala.*" (Italics supplied.) The right of the plaintiffs to maintain the action was questioned; and one ground thereof went to the sufficiency of the certificate of the judge of the Florida court in granting letters testamentary, and so upon the theory that the issuance of the letters testamentary by our probate court to nonresident executors was conditioned upon the statute-defined (Code 1876, §§ 2379-80; Code 1907, §§ 2556-7) facts, viz., that such persons were named as executors in wills regularly probated, and that a copy of the will probated in another state, under which will such nonresident executor has been appointed, "together with a certificate of the judge of the court in which the will was probated, that such will was regularly proved and established, and that letters testamentary were issued thereon to the person applying for letters on same in this state, in accordance with the laws of the state or territory in which such original letters were granted. * * *" From this status of fact and law it readily appears that this court in *Leatherwood v. Sullivan* was specifically invited to determine the questions it did decide in these words: "There is no merit in the other objection urged to the sufficiency of the certificate made by the judge of the court in Florida, which granted the original letters to the plaintiffs. The will, it is said, has but one witness, and the laws of Florida require three witnesses to such a paper. The record fails to show what is the law of Florida on this subject, and we can take notice of the statutes of other states only when they are introduced in evidence. Moreover, even

[Chamboredon v. Fayet, et al.]

were this true, the probate of the will and the grant of letters by a court of competent jurisdiction in Alabama would not for this reason be rendered void. Such judgment of probate would be valid until set aside, and would not be subject to collateral attack, as is here attempted by objecting to the introduction of the letters testamentary in evidence.—*Dickey v. Vann* [81 Ala. 425, 8 South. 195]; *Brock v. Frank,* 51 Ala. 85; *Ward v. Oates,* 43 Ala. 515; *Goodman v. Winter,* 64 Ala. 410 [38 Am. Rep. 13]."

This pronouncement in the Leatherwood-Sullivan appeal has long since become a rule of property in this state; and considerations of the highest moment forbid in this late day a departure from its ruling, whatever may have been held elsewhere. To avoid its effect as a wholesome precedent in this regard on an untenable assumption that its pertinent announcement is dicta is, as I view it, unfortunate.

I therefore dissent.